UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| OGDEN PLAZA GARAGE COMPANY, LLC, <br><br>Plaintiff, <br><br>v. <br><br>FIRST AMERICAN TITLE INSURANCE COMPANY, <br><br>Defendant. | No. 14 C 02442 <br><br>Chief Judge Rubén Castillo |

## MEMORANDUM OPINION AND ORDER

Plaintiff Ogden Plaza Garage Company, LLC ("Ogden") brings this diversity action for breach of contract against Defendant First American Title Insurance Company ("First American"). Presently before the Court is First American's motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, First American's motion to dismiss is granted.

## RELEVANT FACTS

Ogden is an Illinois limited liability company with its principal place of business in Chicago, Illinois. (R. 1, Compl. ¶ 2.) First American is an insurance company incorporated in California with its principal place of business in Santa Ana, California. (*Id.* ¶ 3.) Ogden operates a parking garage on the property that is the subject of this insurance coverage action. (*Id.* ¶ 2.) On March 26, 1998, First American issued a title insurance policy (the "Policy") to insure Ogden's acquired leasehold interest (the "Leasehold") and other real estate that Ogden purchased. (*Id.* ¶ 6.) The Leasehold was created by an indenture of lease (the "Lease") executed on July 10, 1991 between the Chicago Park District (the "Park District") and Chicago Dock and

Canal Trust. (*Id.* ¶ 7.) In the Lease the previous owner of the property conveyed a substantial amount of land to the Park District without charge; the Lease covered a ninety-nine year period from 1988 until 2087. (*Id.* ¶ 8.) The Lease required Ogden, as the eventual lessee, to pay ten dollars annually, as well as the property taxes, in exchange for use of the property as a parking garage. (*Id.*) The Conditions & Stipulations ("C&S") Section 4(a) of the Policy also contains a duty to defend, which provides that:

> [First American], at its own cost and without unreasonable delay, shall provide for the defense of an insured in litigation in which any third party asserts a claim adverse to the title or interest as insured, but only as to those stated causes of action alleging a defect, lien or encumbrance or other matter Insured by this policy.

(R. 1-1, Ex. A, Policy C&S § 4(a).) Additionally, C&S Section 4(b) provides that:

> [First American] shall have the right, at its own cost to institute and prosecute any action or proceeding or to do any other act which in its opinion may be necessary or desirable to establish the title to the estate or interest insured, or to prevent or reduce loss or damage to [Ogden]. [First American] may take appropriate action under the terms of this policy, whether or not it shall be liable hereunder, and shall not thereby concede liability or waive any provision of this policy. If [First American] shall exercise its rights under this paragraph, it shall do so diligently.

(R. 1-1, Ex. A, Policy C&S § 4(b).)

In a September 10, 2009 letter to Ogden, the Park District declared the Lease *ultra vires*[1] and void on the ground that the Park District had no authority to enter into it. (R. 1, Compl. ¶ 9; *see* R. 1-3, Ex. C, Park District Lease Notification.) The Park District signaled that it intended to recover $6 million from Ogden for past use of the property and negotiate new rental arrangements if Ogden wanted to continue occupying the space. (R. 1, Compl. ¶ 9; *see* R. 1-3, Ex. C, Park District Lease Notification.) Ogden retained the law firm DLA Piper, which notified First American on December 4, 2009, of the Park District's actions and Ogden's claim for a

---

[1] *Ultra vires* is defined as, "unauthorized; beyond the scope of power allowed or granted by a corporate charter or law." *Black's Law Dictionary* 1559 (8th ed. 2004).

2

defense under the Policy. (R. 1, Compl. ¶ 11-12; *see* R. 1-4, Ex. D, Ogden's Notice of Claim.) DLA Piper sent several emails to First American in April and May 2010, updating First American on the status of negotiations between the Park District and Ogden. (R. 1, Compl. ¶ 18.) DLA Piper also notified First American of a meeting scheduled for May 26, 2010, between counsel for the Park District and DLA Piper to discuss renegotiations of the Lease terms. (*Id.* ¶ 19.) First American responded to DLA Piper on May 25, 2010, notifying the firm that First American would not provide a defense or take any other action related to Ogden's claim. (*Id.* ¶ 20.) First American determined that Ogden's claim was not covered by the Policy, and therefore, First American was not required to defend Ogden. (*Id.* ¶ 22; *see* R. 1-5, Ex. E, First American's Denial of Coverage.)

On July 2, 2010, the Park District filed an action in the Circuit Court of Cook County for declaratory and injunctive relief to confirm that the Lease was void, and sought damages for unjust enrichment in the amount of $6 million. (R. 1, Compl. ¶ 24.) Ogden notified First American of the state court action via e-mail on July 13, 2010, and requested that First American approve DLA Piper as Ogden's counsel in the Park District's lawsuit. (*Id.* ¶ 25.) Ogden was formally served with the complaint in the state court action on July 26, 2010. (*Id.* ¶ 28.) DLA Piper e-mailed First American on July 29, 2010, notifying it that Ogden had been formally served and reiterating that Ogden needed representation. (*Id.*) On August 6, 2010, DLA Piper e-mailed First American notifying it that the court set an August 25, 2010 deadline for Ogden to file a responsive pleading. (*Id.* ¶ 29.)

On August 13, 2010, First American responded to DLA Piper, agreeing to accept Ogden's tender of claim, but indicating for the first time that First American would retain counsel other than DLA Piper to provide a defense for Ogden. (*Id.* ¶ 30-31.) After DLA Piper

3

contacted First American asking for the names of the attorneys who would be representing Ogden, First American stated that conflict review checks needed to be performed before counsel could be retained. (*Id.* ¶ 33.) On August 23, 2010, two days before Ogden's responsive pleading was due, First American notified DLA Piper that SNR Denton would represent Ogden, and that an SNR Denton attorney would contact DLA Piper for information concerning the suit. (*Id.* ¶ 34.) From the filing of the state court action until First American assigned SNR Denton to take over the defense of Ogden, DLA Piper performed the legal work necessary to prepare a responsive pleading to the Park District's complaint. (*Id.* ¶ 35.) At various times between August 23, 2010, until at least December 31, 2010, SNR Denton sought DLA Piper's advice and assistance in Ogden's defense of the state court action. (*Id.* ¶ 36.) On February 24, 2011, Ogden submitted DLA Piper's invoices to First American, totaling $81,917.24, for reimbursement. (*Id.* ¶ 37.) On March 29, 2011, First American denied the request for reimbursement, asserting that Ogden was responsible for DLA Piper's fees—even those incurred for services provided at SNR Denton's request. (*Id.* ¶ 39.)

The Honorable Rita M. Novak of the Circuit Court of Cook County rendered a judgment in the state court action on August 8, 2013. (*Id.* ¶ 41; *see* R. 1-7, Ex. G, State Ct. Op. and Order.) The court granted the Park District's motion for summary judgment, holding that the Lease was *ultra vires* and void. (R. 1, Compl. ¶ 41.) The court also held that the Leasehold reverted to an easement that existed prior to the Park District's lease with Ogden's predecessor, but the court denied the Park District's claim for unjust enrichment. (*Id.* ¶ 42.) Therefore, the court held that Ogden did not owe the Park District $6 million for the fair rental value for past use. (*Id.* ¶ 61.)

## PROCEDURAL HISTORY

Ogden filed its two-count complaint on April 4, 2014. (R. 1, Compl.) Count I alleges that First American breached its obligations under the Policy by refusing to provide a timely defense for Ogden in the state court action. (*Id.* ¶¶ 44-57.) Count II alleges that First American breached its obligations under the Policy by refusing to indemnify Ogden for the costs DLA Piper accrued in preparing to defend Ogden. (*Id.* ¶¶ 58-64.) First American filed a motion to dismiss the complaint pursuant to Rule 12(b)(6) on April 29, 2014. (R. 8, First American's Mot. Dismiss.) Ogden responded on July 14, 2014, (R. 17, Ogden's Resp.), and First American replied on July 28, 2014, (R. 18, First American's Reply).

## LEGAL STANDARD

The purpose of a Rule 12(b)(6) motion to dismiss is to test the sufficiency of the complaint, not to resolve the case on the merits. *Autry v. Nw. Premium Servs.*, 144 F.3d 1037, 1039 (7th Cir. 1998). A plaintiff must plead "only enough detail to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 764 (7th Cir. 2010). In evaluating a motion to dismiss, the Court accepts as true all well-pleaded factual allegations in the complaint and draws all reasonable inferences in the plaintiff's favor. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). To survive a motion to dismiss, a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the facts alleged allow the Court to draw a reasonable inference that the defendant is liable for the alleged wrong. *Iqbal*, 556 U.S. at 678. In other words, "the court will ask itself *could* these things have happened, not *did* they happen." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010).

Generally, when ruling on a Rule 12(b)(6) motion to dismiss, the Court may only

consider the plaintiff's complaint. *Rosenblum v. Travelbyus.com Ltd.*, 299 F.3d 657, 661 (7th Cir. 2002). Rule 10(c) of the Federal Rules of Civil Procedure, however, provides that "[a] copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." Fed. R. Civ. P. 10(c). The United States Court of Appeals for the Seventh Circuit has held that "this rule includes a limited class of attachments to Rule 12(b)(6) motions." *Rosenblum*, 299 F.3d at 661. Specifically, "documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim." *Wright v. Assoc. Ins. Cos. Inc.*, 29 F.3d 1244, 1248 (7th Cir. 1994).

## ANALYSIS

### I. Applicable Law

Before evaluating the merits of First American's motion, the Court must determine what substantive law applies. A federal court sitting in diversity applies state substantive law and federal procedural law. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 80 (1938). The *Erie* doctrine extends to conflict of laws principles and requires the Court to apply the conflict of laws rules of the forum state to determine which state's substantive law applies. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496-97 (1941). Courts are to "honor reasonable choice-of-law stipulations in contract cases," *Auto-Owners Ins. Co. v. Websolv Computing, Inc.*, 580 F.3d 543, 547 (7th Cir. 2009), however, and are "not [to] worry about conflict of laws unless the parties disagree on which state's law applies." *Wood v. Mid-Valley Inc.*, 942 F.2d 425, 427 (7th Cir. 1991). In the instant case, although the Policy contains no express choice-of-law provision, Ogden chose Illinois as the forum, and both parties cite exclusively to Illinois law in their pleadings. Accordingly, the Court will apply Illinois contract law to determine whether Ogden has sufficiently stated a claim for breach of contract.

## II. Whether First American breached the Policy's duty to defend

Ogden argues that First American breached its duty to timely defend Ogden against the Park District's state court claim, and thus First American is liable for DLA Piper's attorneys' fees for: (1) defending Ogden after the Park District declared the Lease void but before the state court action was filed; (2) responding to the state court action up until First American appointed SNR Denton to represent Ogden; and (3) assisting SNR Denton in defending Ogden in the state court action. (R. 17, Ogden's Resp. at 6.) Specifically, Ogden argues that C&S Section 4(a) is ambiguous and can be read to support its assertion that First American is liable for DLA Piper's attorneys' fees. (*Id.*) First American argues that it fulfilled its obligations to defend Ogden under the Policy, and that the Policy unambiguously precludes recovery of Ogden's attorneys' fees. (R. 9, First American's Mem. at 2-3.)

The goal of contract interpretation is to ascertain the parties' intent, and in so doing, the Court first looks to "the plain and ordinary meaning" of the contract language. *Gallagher v. Lenart*, 874 N.E.2d 43, 58 (Ill. 2007). The Court must construe the contract "as a whole, viewing each part in light of the others." *Id.* The Court also must seek to give effect to "each clause and word used," without rendering any terms meaningless. *Hufford v. Balk*, 497 N.E.2d 742, 744 (Ill. 1986). When a contract is "clear and explicit, a court must enforce the agreement as written." *Rakowski v. Lucente*, 472 N.E.2d 791, 794 (Ill. 1984). Conversely, a contract may be ambiguous if its language is susceptible to more than one meaning. *Thompson v. Gordon*, 948 N.E.2d 39, 47 (Ill. 2011). Whether or not a contract is ambiguous is a question of law. *Cent. Ill. Light Co. v. Home Ins. Co.*, 821 N.E.2d 206, 214 (Ill. 2004).

The relevant Policy provision states, "[First American], at its own cost and without unreasonable delay, shall provide for the defense of an insured in litigation in which any third

7

party asserts a claim adverse to the title or interest as insured." (R. 1-1, Ex. A, Policy C&S § 4(a).) First American contends that its duty to defend was not triggered until the Park District filed its claim against Ogden because it interprets the term "litigation" to mean the filing of a lawsuit. (R. 9, First American's Mem. at 3.) First American concludes that because it provided a defense to Ogden after the filing of the state court action, it has complied with the terms of the Policy. (*Id.*) On the other hand, Ogden argues that "litigation" in this Policy is ambiguous. (R. 17, Ogden's Resp. at 6.) In Ogden's view, the "litigation" in this case began when the Park District declared the Lease *ultra vires* and void. (*Id.*) Consequently, Ogden argues that First American is liable for the costs DLA Piper attorneys accrued during the negotiation process and up until SNR Denton attorneys were retained. (*Id.*) Therefore, the parties' arguments turn on the Court's interpretation of the term "litigation."

Illinois courts have not defined this term, and thus the Court turns to *Black's Law Dictionary* to establish its plain and ordinary meaning. *See Gallagher*, 874 N.E.2d at 58-59. The term "litigation" is defined as "[t]he process of carrying on a lawsuit; a lawsuit itself." *Black's Law Dictionary* 952 (8th ed. 2004). In turn, *Black's Law Dictionary* defines lawsuit, pursuant to the term suit, as "[a]ny proceeding by a party or parties against another in a court of law." *Id.* at 1475. Thus, the Court agrees with First American that the term "litigation" means the filing of a lawsuit.[2] Having established the plain and ordinary meaning of "litigation," the Court finds the relevant Policy language unambiguous and not susceptible to any interpretation other than that of First American's. The provision plainly states that First American's duty to defend is triggered by the filing of a lawsuit that asserts a claim adverse to Ogden's title.

---

[2] In making this determination, the Court also notes that under Illinois law the duty to defend is not triggered until the insurer receives actual notice of the underlying litigation. *Cincinnati Cos. v. W. Am. Ins. Co.*, 701 N.E.2d 499, 502-03 (Ill. 1998).

Additionally, C&S Section 4(b) further supports the Court's determination that no duty to defend exists prior to the commencement of litigation. Section 4(b) states that First American "shall have the right . . . to institute and prosecute any action or proceeding . . . which *in its opinion* may be necessary or desirable to establish the title to the estate or interest insured, or to prevent or reduce loss or damage" to Ogden. (R. 1-1. Ex. A, Policy C&S § 4(b) (emphasis added).) This provision provides First American the discretion to initiate proceedings to protect Ogden's title prior to a third party's filing of an adverse claim. First American chose not to exercise its right to defend Ogden until an adverse claim had been filed, as was its prerogative under the Policy. Once the state court action was filed, First American assigned attorneys from SNR Denton who represented Ogden through the entirety of the litigation, which is all that is required under the Policy.

As an alternative argument, Ogden argues that First American breached its duty to defend because there was an "unreasonable delay" in First American assigning SNR Denton attorneys to defend Ogden. (R. 17, Ogden's Resp. at 12.) First American counters that it promptly provided a defense for Ogden once it became aware that Ogden had been served with the Park District's complaint in the state court action. (R. 18, First American's Reply at 10.)

Neither party cited to any case law or Policy language to support their arguments. The Court's research did not reveal any Illinois case law interpreting the term "unreasonable delay," and it is not defined in *Black's Law Dictionary*, but the Court has found cases that are instructive on this point. The Illinois Court of Claims has held that in order to prevail in a breach of contract claim stemming from an unreasonable delay, the claimant must show a delay of an unreasonable length of time, that the delay was proximately caused by the respondent's actions,

that the delay resulted in some injury to the claimant, and that the respondent was the sole proximate cause of the delay. *Fru-Con Corp. v. State*, 50 Ill. Ct. Cl. 50, 67 (Ill. Ct. Cl. 1996).

Applying those factors here, the Court understands Ogden's argument to be that First American's assignment of SNR Denton only two days before the responsive pleading's due date constitutes an unreasonable delay. (R. 17, Ogden's Resp. at 12.) As First American rightly points out, Ogden makes no allegations that SNR Denton attorneys failed to file a timely response pleading, or that the timing of their assignment had any adverse impact upon the litigation. (R. 18, First American's Reply at 10.) Thus, the Court determines that Ogden suffered no real delay. Nor is it clear what alleged injury Ogden sustained, given that the response to the complaint was timely filed. The Court reads Ogden's pleadings to allege that its injury is the costs it incurred by DLA Piper preparing a responsive pleading because no attorneys had been assigned to the case. (R. 17, Ogden's Resp. at 12.) However, First American notified Ogden on August 13, 2010, fourteen days prior to the due date for the responsive pleading, that it would provide a defense in the case. (R. 1, Compl. ¶ 30-31.) Additionally, the Policy explicitly states that it will not pay the fees of any counsel other than the counsel it retains to defend the underlying claim. (R. 1-1, Ex. A, Policy C&S § 4(a).) Therefore, the Court does not find Ogden suffered any injury. Having found that Ogden loses on these two factors, the Court need not consider the remaining factors. The Court concludes that First American's alleged actions do not meet this standard of unreasonable delay.

Illinois courts have also interpreted the term "unreasonable delay" under section 155 of the Illinois Insurance Code, holding that "[w]hether a delay is vexatious and unreasonable is a question of fact that must be assessed based on the totality of the circumstances, taken in broad focus." *Cook ex rel. Cook v. AAA Life Ins. Co.*, 13 N.E.3d 20, 37 (Ill. App. Ct. 1st Dist. 2014)

(citing *Keller v. State Farm Ins. Co.*, 536 N.E.2d 194, 204 (Ill. App. Ct. 5th Dist. 1989)); *see also Bernstein v. Genesis*, 90 F.Supp.2d 932, 940 (N.D. Ill. 2000) ("Although the question of what constitutes vexatious and unreasonable conduct is a fact-specific inquiry, the final evaluation of the insurer's conduct is made by the court." (citing *Horning Wire Corp v. Home Indem. Co.*, 8 F.3d 587, 590 (7th Cir. 1993))). In evaluating the totality of the circumstances, courts have examined such factors as "the insurer's attitude, whether the insured was forced to file suit to recover, and whether the insured was deprived of the use of its property." *Cook*, 13 N.E.3d at 37 (quoting *Mobil Oil Corp. v. Md. Cas. Co.*, 681 N.E.2d 552, 558 (Ill. App. Ct. 1st Dist. 1997)).

In the instant case, the Court's examination of the totality of the circumstances also reveals that no unreasonable delay occurred in First American's defense of Ogden. First American promptly provided a defense after it received notice of the state court action. Further, Ogden did not have to file suit to receive the benefit of First American's defense. Also, Ogden does not allege that it was deprived of the use of the parking garage at any time prior to the state court judgment. Therefore, under either standard, Ogden fails to allege that First American was unreasonably delayed in providing its defense.

Ogden's final alternative argument is that First American is liable for DLA Piper's attorneys' fees for the assistance it provided to SNR Denton. (R. 17, Ogden's Resp. at 15-16.) First American argues that Ogden is precluded from recovering these fees due to the explicit language of C&S Section 4(a). (R. 18, First American's Reply at 12.) It is not immediately clear on what contractual basis Ogden asserts that First American should be responsible for paying these fees. Nonetheless, as the Court discussed above, the relevant provision clearly and unambiguously states that First American has the right to choose counsel "and will not pay the

fees of any other counsel." (R. 1-1, Ex. A, Policy C&S § 4(a).) As a result, Ogden cannot prevail on this argument.

For all these reasons, the Court finds that Ogden has not sufficiently alleged that First American breached its duty to defend. Thus, Count I of the complaint is dismissed.

### III. Whether First American breached the Policy's duty to indemnify

Ogden alternatively claims that even if First American is not liable to pay DLA Piper's attorneys' fees based on its duty to defend, it must do so based upon its duty to indemnify as outlined in C&S Section 7(a)(ii). (R. 17, Ogden's Resp. at 15.) First American counters that the Policy as a whole, specifically Sections 4 and 7, expressly preclude Ogden's recovery of DLA Piper's attorneys' fees. (R. 9, First American's Reply at 7-8.)

As discussed above, the Court must construe the contract as a whole, *Gallagher*, 874 N.E.2d at 58, and must seek to give effect to "each clause and word used," without rendering any terms meaningless, *Hufford*, 497 N.E.2d at 744. In addition, any contract provision regarding attorneys' fees "should be strictly construed and enforced at the discretion of the trial court." *Powers v. Rockford Stop-N-Go, Inc.*, 761 N.E.2d 237, 240 (Ill. App. Ct. 2d Dist. 2001). By "strictly construing" the contract, the Court must "construe[ ] it to mean nothing more—but also nothing less—than the letter of the text." *Erlenbush v. Largent*, 819 N.E.2d 1186, 1189 (Ill. App. Ct. 4th Dist. 2004).

Here, Section 7(a)(ii) of the Policy states that "[t]he liability of [First American] under this policy shall not exceed . . . the difference between the value of [Ogden's] estate or interest as insured and the value of [Ogden's] estate or interest subject to the defect, lien or encumbrance insured against by this policy." (R. 1-1, Ex. A, Policy C&S § 7(a)(ii).) Section 7(c) adds that First American "will pay only those costs, attorneys' fees and expenses incurred in accordance

with Section 4 of these Conditions and Stipulations." (*Id.* § 7(c).) Ogden argues that DLA Piper's attorneys' fees constitute a diminution in value because the fees represent the loss Ogden suffered when the state court determined that Ogden had an easement instead of the Leasehold it purchased. (R. 17, Ogden's Resp. at 17.) The Court finds Ogden's argument unpersuasive, particularly in light of the language in C&S Section 7(c), which explicitly states that First American will not pay attorneys' fees other than those permitted by C&S Section 4. As the Court has stated above, Section 4 clearly and unambiguously limits recovery of attorneys' fees to fees incurred by counsel retained by First American. (R. 1-1, Ex. A, Policy C&S § 4(a).) The Court must strictly enforce this provision. *See Powers*, 761 N.E.2d at 240. Accordingly, the Court finds that First American is not responsible for compensating Ogden for DLA Piper's attorneys' fees. The Court thus determines that Ogden has not sufficiently alleged that First American breached its duty to indemnify.[3] As a result, Count II of the complaint is dismissed.

## CONCLUSION

For the foregoing reasons, First American's motion to dismiss the complaint pursuant to Rule 12(b)(6) is GRANTED.

ENTERED: _____
Chief Judge Rubén Castillo
United States District Court

**Dated: November 21, 2014**

---

[3] The Court notes that even if it had found DLA Piper's attorneys' fees compensable as a diminution of value, under Illinois law the duty to indemnify arises only when the insured becomes legally obligated to pay damages in the underlying action that gives rise to a claim under the policy. *Travelers Ins. Co. v. Eljer Mfg., Inc.*, 757 N.E.2d 481, 491 (Ill. 2001). Because Ogden did not have to pay any damages in the state court action, First American's duty to indemnify would not have been triggered.

13